IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ANDREW MILLAS,                )
                              )
          Plaintiff,          )
                              )
vs.                           )   Case No. 08-cv-0573-MJR
                              )
MORGAN STANLEY & CO., INC.,   )
                              )
          Defendant.          )

# MEMORANDUM and ORDER

**REAGAN, District Judge:**

## A. Factual and Procedural History

On June 23, 2008, Millas filed this action in the Third Judicial Circuit, Madison County, Illinois (Doc. 2-2). Morgan Stanley is registered to sell securities as a member of the Financial Industry Regulatory Authority ("FINRA").[1] Morgan Stanley hired Millas as a branch manager in August 1999. The employment agreement included the following arbitration clause:

> **ARBITRATION**
> Any controversy or claim arising out of or relating to this Agreement, or its breach, will be settled by arbitration before either the National Association of Securities Dealers, Inc. or the New York Stock Exchange, Inc., as Dean Witter may elect, in accordance with their respective rules, and judgment upon the award entered by the arbitrator(s) may be entered in any court having jurisdiction thereof. Employee agrees to stipulate, upon request by Dean Witter, to expedited hearing procedures for such arbitration. This paragraph will not be deemed a waiver of Dean Witter's right to injunctive relief as provided for in paragraph 3 of this Agreement.

**Doc. 16, Exh. B, ¶ 7.** Additionally, as required by FINRA rules, Millas completed and filed a

---

[1] FINRA was previously known as the National Association of Securities Dealers, Inc. ("NASD"). The NASD Code governs FINRA arbitrations.

1

Uniform Application for Securities Industry Regulation ("Form U-4"), which also included an arbitration provision:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the SROs indicated in Item 11 as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction.

**Doc. 16, Exh. C, ¶ 5.**[2] **NASD Code § 13200** requires that a dispute that "arises out of the business activities of a member or an associated person and is between . . . Members and Associated Persons" must be submitted to arbitration. Neither party disputes that Morgan Stanley is a "member" and Millas is an "associated person" under the Code.

In December 2006, Millas assumed the title of Vice President and Financial Advisor. In August 2007, Millas was informed that Morgan Stanley was placing him on "heightened security" due to allegations that he engaged in unauthorized trading through client accounts. Millas claims that he was never provided with any specific information regarding these allegations. Millas filed a letter of resignation on January 29, 2008, but Morgan Stanley terminated his employment on that date anyway.

Soon after he was terminated, Millas pursued an employment offer with Stifel Nicolaus. On February 11, 2008, Morgan Stanley filed a Uniform Termination Notice for Securities Industry Registration ("Form U-5") with the FINRA, wherein Morgan Stanley stated that Millas was discharged because he "exercised discretion in customer accounts without proper authorization."

---

[2] The Form U-4 provided by Morgan Stanley is not signed by Millas, as that copy was kept and maintained in the World Trade Center and was destroyed on September 11, 2001. However, Morgan Stanley represents that the standard Form U-4 provided is a fair and accurate representation of the Form U-4 signed by Millas. Millas does not contest this representation.

According to the complaint, Morgan Stanley replied affirmatively to a question on the Form U-5 that asked: "Did the individual voluntarily resign from your firm, or was the individual discharged or permitted to resign from your firm, after allegations were made that accused the individual of: violating investment-related statutes, regulations, rules or industry standards and conduct?" Millas claims that these statements are false, and that Stifel Nicolaus rescinded its employment offer due to the false statements.

Millas's complaint alleges that Morgan Stanley breached contract by failing to properly compensate him according to the fee-sharing and commission provisions in his contract. He also raises a claim of defamation, alleging that Morgan Stanley's statements on his Form U-5 are false and were made with the intent to damage his reputation. Finally, Millas claims that Morgan Stanley's refusal to accept a written resignation and its false statements on the Form U-5 constitute a tortious interference with a business expectancy, as Stifel Nicolaus rescinded its employment offer due to Morgan Stanley's conduct.

On August 11, 2008, Morgan Stanley removed the case to this federal District Court alleging diversity jurisdiction under 28 U.S.C. § 1332 (Doc. 2). Claiming that Millas's employment contract, his Form U-4, and the FINRA rules require the parties to settle their dispute via arbitration, Morgan Stanley moved this Court to stay proceedings and compel arbitration on September 11, 2008 (Doc. 16). Millas filed a response on October 14, 2008 (Doc. 23). Morgan Stanley elected not to file a reply.

Having fully considered the parties' filings, the Court hereby **GRANTS** Morgan Stanley's motion to compel arbitration (Doc. 16) and **STAYS** this action pending the parties' resolution of this matter via arbitration.

## B. Analysis

Federal law strongly favors the enforcement of private arbitration agreements. The Federal Arbitration Act ("FAA") provides that an arbitration provision in "a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." **9 U.S.C. § 2.** Additionally, the caselaw is well-settled that the presence of an arbitration clause in a contract creates a presumption that the dispute should be arbitrated, "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." ***AT&T Techs., Inc. v. Commc'ns Workers of America*, 475 U.S. 643, 650 (1986) (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960)).** Where a court compels arbitration pursuant to any such provision, the FAA provides that the case shall be stayed "until such arbitration has been had in accordance with the terms of the agreement." **9 U.S.C. § 3.**

In determining whether to grant a motion to compel arbitration, this Court looks for three elements: "a written agreement to arbitrate, a dispute within the scope of the arbitration agreement, and a refusal to arbitrate." ***Zurich American Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005).** Millas argues that the arbitration clauses are unenforceable due to unconscionability. Additionally, Millas argues that even if the clauses are enforceable, the complaint alleges intentional conduct that is outside the scope of the arbitration provisions.

It is abundantly clear that Millas refuses to arbitrate his claims. Thus, the Court begins with the question of whether a valid agreement to arbitrate exists. If so, the Court then considers whether the arbitration provision encompasses any of the claims involved in the instant action.

4

**1. Whether a Valid Agreement to Arbitrate Exists**

Millas first argues that the arbitration provisions are unenforceable due to unconscionability. It should be noted that Millas primarily attacks the employment agreement on these grounds, but the Court construes his response as addressing the Form U-4 as well. Under Illinois law, an unconscionable contract provision will not be enforced. In analyzing this issue, the Court looks for both procedural and substantive unconscionability.

> Illinois law provides that:
>
> Unconscionability may be procedural or substantive, or a combination of both. *Kinkel v. Cingular Wireless, LLC*, . . . 857 N.E.2d 250[, 263] (2006). "'Procedural unconscionability refers to a situation where a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it.'" *Kinkel*, . . . 857 N.E.2d 250[, 264] (quoting *Razor v. Hyundai Motor America*, 854 N.E.2d 607[, 622] (2006)). This analysis also takes into account the disparity of bargaining power between the drafter of the contract and the party claiming unconscionability. *Razor*, . . . 854 N.E.2d 607[, 622]. On the other hand, substantive unconscionability "'concerns the actual terms of the contract and examines the relative fairness of the obligations assumed' and is indicated by 'contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity.'" *Hutcherson v. Sears Roebuck & Co.*, . . . 793 N.E.2d 886[, 895] (2003) (quoting *Maxwell v. Fidelity Financial Services, Inc.*, . . . 907 P.2d 51, 58 (1995)).

***Williams v. Jo-Carroll Energy, Inc.*, 890 N.E.2d 566, 569 (Ill. App. Ct. 2008).**

With respect to procedural unconscionability, Millas does not forcefully argue that the arbitration agreements were difficult to find, read, or understand, though he does make a generic claim that he may not have signed the agreements knowingly and voluntarily. But this argument is to no avail. The provisions in the employment agreement and Form U-4 are quite straightforward. Additionally, the arbitration clauses therein are not buried within these agreements. In the

employment contract, the provision appears on page 2 of 2 at paragraph 7 and is labeled "**ARBITRATION**" in bold, capital letters. Form U-4 is a one-page document, and the relevant provision appears at paragraph 5 of 10.

Millas instead focuses his procedural unconscionability argument on the bargaining power of the parties. Specifically, he claims that the agreements were contracts of adhesion and that he had no real expectation to modify the terms of the employment contract, except for possibly salary and vacation. In other words, Millas argues that he either had to accept the employer's terms, including the arbitration clauses, or else find other work.

In ***Oblix, Inc. v. Winiecki***, the Seventh Circuit has indicated that such arguments, without more, are not sufficient to make a showing of unconscionability. Discussing an employee's argument that the arbitration clause in her contract was unconscionable because it was adhesive, the court noted:

> Winiecki does not deny that the arbitration clause is supported by consideration—her salary. Oblix paid her to do a number of things; one of the things it paid her to do was agree to non-judicial dispute resolution. It is hard to see how the arbitration clause is more suspect, or any less enforceable, than the others—or, for that matter, than her salary.
> . . . Businesses regularly agree to arbitrate their disputes with each other; giving employees the same terms and forum . . . that a firm deems satisfactory for commercial dispute resolution is not suspect. Employees fare well in arbitration with their employers—better by some standards than employees who litigate, as the lower total expenses of arbitration make it feasible to pursue smaller grievances and leave more available for compensatory awards.

**374 F.3d 488, 391 (7th Cir. 2004).**

The same reasoning applies to Millas's blanket assertions here. The fact that Millas had no power to negotiate each and every term of the employment agreement is not sufficient for this

Court to find that the contract is unconscionable. And Millas does indicate in his response that he engaged in some negotiations with respect to salary and vacation. The level of procedural unconscionability, if any existed at all, with respect to the parties' bargaining position was quite small. *See Williams*, **890 N.E.2d at 571 ("However, just because a contract is prepared by a party in a superior bargaining position, without allowing the other party to negotiate any terms, does not mean that an included arbitration clause is unconscionable. Rather, some fraud or similar wrongdoing must be shown to invalidate such a provision as unconscionable.") (citing** *Zobrist v. Verizon Wireless*, **822 N.E. 2d 531, 541 (2004)).**

With respect to the question of substantive unconscionability, Millas argues that the arbitration clauses do not require Morgan Stanley to arbitrate its claims, waive his right to further review of an adverse decision, and require Millas to pay excessive costs. Millas also argues that the prescribed arbitration system is inherently biased in favor of the industry and against claimants.

The Court cannot find that the terms of the agreements are substantively unconscionable. First, Millas's argument that the arbitration agreements are unilateral, because they require Millas to arbitrate disputes but do not require the same of Morgan Stanley, is simply unfounded. The employment agreement states that both the employer and employee agree to all terms therein, providing in relevant part:

> In consideration of Dean Witter's employment and compensation of the Employee as an Account Executive and other good and valuable consideration, **the parties hereby agree as follows**:
> . . . . Any controversy or claim arising out of or relating to this Agreement, or its breach, will be settled by arbitration before either the National Association of Securities Dealers, Inc. or the New York Stock Exchange, Inc., as Dean Witter may elect . . . .

**Doc. 16, Exh. B, ¶ 7.** The agreement is signed by both Millas and a branch manager for his

employer. The fact that the agreement provides that the employer may choose between two specifically identified arbitrators does not make the provision unilateral.

Moreover, as far as the Court can tell, while Form U-4 is not an agreement between the parties, the arbitration provision at paragraph 5 recognizes an applicant's agreement to arbitrate disputes in accordance with FINRA/NASD regulations. **Doc. 16, Exh. C.** As noted above, those very regulations require arbitration of any dispute that "arises out of the business activities of a member or an associated person and is between . . . Members and Associated Persons." **NASD Code § 13200.** In other words, Morgan Stanley is held to the same arbitration requirements as Millas under the FINRA regulations. Thus, there is no merit to Millas's argument that the arbitration provision in Form U-4 is unilateral.

Additionally, the Court is unmoved by Millas's argument that the arbitration process imposes excessive costs and unfairly requires Millas to waive his right to the review of an adverse decision. These arguments cover ground on which the law is well-settled. The Appellate Court of Illinois recently noted that the burden of showing excessive costs in the arbitration process lies on the party seeking to invalidate the provision. ***Bess v. DirectTV, Inc.*, 885 N.E.2d 488, 498 (Ill. App. Ct. 2008)**. "In order to meet her burden, the party must provide some individualized evidence to show that she is likely to face prohibitive costs in the arbitration and that she is financially incapable of meeting those costs." *Id.* Millas does not attempt to show either, preferring a generic allegation of unfairness in the costs involved in arbitration. This approach is insufficient to satisfy Millas's burden.

Likewise, Millas's generic claims of bias do not persuade this Court that the arbitration provision is unconscionable. There is no support in the record for these bare bones

8

assertions, and the Court need not give credence to them. It is sufficient to note that Millas has utterly failed to present anything from which the Court could conclude that the FINRA's arbitration procedures are biased against the claimant to the extent that each and every provision requiring arbitration under the FINRA's rules is substantively unconscionable.

Finally, Millas's argument that the arbitration provisions waive his right to review of an adverse decision is without merit. The nature of an agreement to submit disputes to binding arbitration rather than the courts obviously includes an understanding that appellate review is extremely limited. Millas's agreements to arbitrate necessarily included this concession. The mere suggestion that this component makes the provisions unfair does not overcome the force of the FAA's requirements.

Accordingly, the Court is unable to find that the arbitration provisions in the employment agreement and Form U-4 are unconscionable.

## 2. The Scope of the Arbitration Agreement

Having found that the arbitration provisions in question are enforceable, the Court must now determine whether they apply to the particular claims at issue in this case. The controlling language in the employment agreement requires arbitration of "Any controversy or claim arising out of or relating to this Agreement, or its breach . . ." **Doc. 16, Exh. B, ¶ 7.** The Form U-4 requires arbitration of "any dispute, claim or controversy that may arise between [Millas and Morgan Stanley]" insofar as arbitration is required by FINRA rules. **Doc. 16, Exh. C, ¶ 5.** Broad arbitration clauses such as these have expansive reach and create a presumption of arbitrability. *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909–10 (7th Cir. 1999) (citing *Elzinga & Volkers, Inc. v. LSSC Corp.*, 47 F.3d 879, 881 (7th Cir. 1995); *Tracer Research Corp. v. Nat'l Envtl. Servs.*

9

*Co.*, 42 F.3d 1292, 1295 (9th Cir. 1994)).

Millas raises three causes of action: breach of contract, defamation, and tortious interference with a business expectancy. It should be self-explanatory why Millas's breach of contract claim "arises out of or relates to" the employment agreement or its breach. Indeed, Millas essentially concedes this point by focusing his arguments only on the defamation and tortious interference claims. So the Court now turns to the question of whether the broad arbitration provisions here encompass these two claims.

The defamation claim and the tortious interference claim pertain to the statements Morgan Stanley made after Millas's termination when filling out his Form U-5. The tortious interference claim also involves Millas's allegation that Morgan Stanley wrongly refused his request to resign voluntarily. These claims certainly "arise out of or relate to" Millas's employment at Morgan Stanley. Morgan Stanley explains, and Millas does not dispute, that it was required by FINRA regulations to file the Form U-5 upon Millas's termination. As a result, any statements or conduct in conjunction with filling out the Form U-5 are certainly related to Millas's employment, and therefore fall under the broad language of the arbitration provisions at issue here.

Millas's sole argument on this point is that intentionally making false statements on the Form U-5 cannot possibly "relate to" Morgan Stanley's business activities. But it most certainly does, when filling out the Form U-5 is a direct and necessary consequence of terminating Millas's employment with the firm. Moreover, Millas does not cite a single case, and the Court can locate none, to support the proposition that the mere allegation of willful conduct removes a dispute from the scope of a broad arbitration clause.

As a result, the Court finds that Millas's three causes of action fall within the scope

of the arbitration provisions and must be submitted to arbitration.

## C.  Conclusion

Accordingly, the Court hereby **GRANTS** Morgan Stanley's motion to compel arbitration (Doc. 16) and **STAYS** this action pending the parties' resolution of this action via arbitration.

Additionally, the Court **DIRECTS** Morgan Stanley to file regular status reports apprising the Court as to the parties' progress in resolving this dispute via arbitration.  Such reports **shall be filed** on the following dates: March 2, 2009, May 4, 2009, August 3, 2009, and every two months thereafter.

**IT IS SO ORDERED.**

**DATED this 1st day of December 2008.**

<u>s/ Michael J. Reagan</u>
**MICHAEL J. REAGAN**
**United States District Judge**